Filed 2/27/25  P. v. Steele CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TERRANCE STEELE,<br><br>    Defendant and Appellant. | B335320<br><br>Los Angeles County<br>Super. Ct. No. BA260309 |

        APPEAL from an order of the Superior Court of Los Angeles County, Karla D. Kerlin, Judge.  Affirmed.
        Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.
        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, and Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

        Terrance Steele appeals the trial court's denial of his resentencing motion under Penal Code, section 1172.6.  Because

he is ineligible for relief as a matter of law, we affirm. Undesignated statutory citations are to the Penal Code.

I

We take facts from our opinion in Steele's direct appeal, *People v. Steele* (Jun. 16, 2008, B193519 [nonpub. opn.] (*Steele*). We present these facts for context only. (*People v. Lewis* (2021) 11 Cal.5th 952, 970–972 [court must not engage in factfinding in determining whether prima facie case has been made].)

The prosecutor's theory was that Steele and fellow gang members Roy Jackson and Darrell Williams planned to murder rival gang members, but that, when Jackson and Williams started shooting, Williams accidentally shot Jackson and killed him. Steele's statement to police was the prosecution's main evidence.

Steele, a member of the Top Dollar Hustlers gang, and another man were in a liquor store when Steele got a call that two members of rival gang Bounty Hunters, Michael McCullough and Ron Mateo, were approaching the store with guns. Steele and the other man left quickly. As they drove away, Steele saw McCullough and Mateo reach the store. He thought they had guns.

Steele called his friend and fellow gang member Jackson and asked for a gun. Jackson told Steele to come to the house of Jackson's girlfriend Roshanda Baker that evening. Steele did so, meeting with Jackson and a third gang member, Williams. Before the meeting, Steele saw McCullough and Mateo, as well as Andre Griffin, another member of the Bounty Hunters across the street from 965 West 47th Street.

During the meeting at Baker's house, Jackson proposed that he and Williams would sneak up on the three Bounty

2

Hunters and shoot them. Jackson had a .45-caliber and gave Williams a .38-caliber gun. Steele was to stand by in the back and take the guns from the other two after the shooting so he could hide the guns while they escaped.

The three men went through an alley to the rear of 965 West 47th Street. Steele waited in the backyard, while Jackson and Williams went to the front yard and hid behind a bush. Steele heard two guns being fired. Steele moved toward the front yard and saw Williams running toward him. Williams did not try to give his gun to Steele. Williams told Steele "[Jackson] got laid," and ran back toward Baker's house. Steele continued toward the front yard, looking for Jackson. He heard shots being fired at him and saw Jackson was down, so he returned to Baker's house. Steele concluded Williams shot Jackson by accident.

At Baker's place, Steele took Baker inside, leaving Williams on the porch. Steele told Baker Jackson had been shot, and, if it had been in the back, Williams had done it. Steele thought this because he heard both guns being fired, saw Williams return, and heard no other shots. Williams tried to give Steele his gun, but Steele refused to take it, not wanting to be accused of or involved with Jackson's murder. After an anonymous tip, police found the .38-caliber gun near 965 West 47th Street and confirmed that gun fired the bullet that killed Jackson.

Police interviewed Steele about three months later. He gave the account we have described. The recording device failed and no recording was made. Police interviewed Steele again later and asked him to confirm what he had said in the previous interview. Steele did.

3

After a trial, the jury convicted Steele of first degree murder, attempted first degree murder, and conspiracy to commit first degree murder. The court sentenced him to 45 years to life.

In 2021, Steele petitioned to be resentenced under section 1172.6. The trial court appointed counsel for Steele, received briefing, and held a hearing on whether Steele had showed prima facie eligibility for relief. The court found Steele had done so and set an evidentiary hearing. The parties filed evidentiary hearing briefs. The prosecutor asked the court to reconsider its prima facie holding. Steele filed an opposition to this request.

After a hearing, the court granted the request to reconsider and reversed its finding that Steele had made a prima facie showing for relief. The court noted that each of the relevant instructions the court gave during Steele's trial required the jury to find that Steele personally harbored malice. Steele argued the prosecutor's closing argument told the jury otherwise.

The court determined closing argument was not part of the record of conviction and thus could not be considered at the prima facie stage. The court therefore denied the petition without holding an evidentiary hearing.

Steele appealed.

## II

Steele argues the trial court erred in failing to consider the prosecutor's statements during closing argument and therefore incorrectly found he had not made a prima facie showing of eligibility under section 1172.6. We hold the closing argument was indeed part of the record of conviction, but that any error was harmless because Steele is ineligible for relief as a matter of law.

4

A

Through Senate Bill No. 1437 (2017-2018 Reg. Ress.) (Senate Bill 1437) and later legislative actions, the Legislature changed murder law to align punishment with culpability. (*People v. Arellano* (2024) 16 Cal.5th 457, 472.)  To this end, the legislature narrowed the felony murder rule, eliminated liability for murder as an aider and abettor under the natural and probable consequences doctrine, and eliminated imputation of malice based on mere participation in a crime.  (*Id*. at pp. 467–468.)

The legislature included a mechanism for defendants convicted previously to petition for resentencing if they could not be found guilty of murder under the new laws.  (§ 1172.6, subd. (a).)  Once a person files such a petition, the trial court must appoint counsel, if requested, and then determine whether the person has shown a prima facie eligibility for relief.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); § 1172.6, subds. (b)(3) & (c).)  In doing so, the court may look at the record of conviction but may not engage in any factfinding or determinations of credibility.  (*Lewis, supra*, at pp. 970–972.)  Only if the record shows the petitioner is ineligible as a matter of law under this restricted review, may the court summarily deny the petition without ordering an evidentiary hearing.  (*Ibid*.)

We independently review a court's determination that a petitioner is ineligible as a matter of law.  (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

B

Steele's main contention is that "the prosecutor's incorrect interpretation of the transferred intent doctrine allowed the jury to impute the express malice of the actual killer to appellant

without finding that appellant personally harbored the mental state of express malice." The prosecutor's words refute this contention.

We do agree with Steele the trial court erred in refusing to consider the transcript of the prosecutor's argument. Trial transcripts are part of the record of conviction, and courts regularly examine them in determining a petitioner's eligibility. (See, e.g., *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 [court considered "entire record of conviction," including closing argument to determine jury's true findings on special-circumstance allegations did not preclude defendant's eligibility as a matter of law]; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 (*Offley*) [court considered prosecutor's closing argument in determining jury might have convicted defendant based on imputed malice]; *People v. Harden* (2022) 81 Cal.App.5th 45, 54–56 [court considered instructions and closing argument in determining jury must have concluded defendant was actual killer].)

Steele cites the following passage from the prosecutor's closing argument as eliminating the requirement Steele personally have malice:

"[Prosecutor]: And I've already read you the instructions on transferred intent. When you try to kill someone and you miss, you're still responsible for whoever you hit. And so what we look at here is -- and I made this to simplify it as much as possible.

"If Darryl Williams is our shooter, he's shooting at the Bounty Hunters. He shoots at the Bounty Hunters and he misses and he hits Roy Jackson, well, he's guilty of first-degree murder.

"Because we have premeditation, obviously, they plan this out ahead of time. They go down, they do the shooting. They

miss, they hit Roy Jackson. [Williams is] guilty of first-degree murder.

"Well, if [Steele] aids and abets, he stands in the shoes of Darryl Williams.  He goes from his spot and just slides right over.  Whatever Darryl Williams is guilty of, he's guilty of. And that's how simple it is with aiding and abetting.

"And then you look at, obviously, with transferred intent, same thing.  It doesn't matter who was the one who shot, whether it was [Steele], or Darryl Williams, . . . They're shooting at the intended victim, they miss and they hit Roy Jackson.  Each of them, whoever was the shooter, is guilty of first-degree murder.

"And again, going to the aiding and abetting, if one's the shooter and the other one's just helping, whoever's helping is guilty of first-degree murder.  It's as simple as that."

Steele argues these words allowed the jury to find him guilty, without finding Steele had his own intent to kill, under a theory of transferred intent if his action merely aided Williams in killing Jackson.

This argument fails.  The prosecutor told the jury the first step was to decide if Steele was an aider and abettor:  "Well, *if* [Steele] aids and abets, he stands in the shoes of Darryl Williams."  To find that Steele was an aider and abettor, the jury had to find Steele himself intended to aid and abet murder.  The prosecutor's formulation did not eliminate the requirement Steele have his own intent to kill.

If Steele aided and abetted Williams's murder, the theory of transferred intent would make both Williams and Steele properly liable for the murder of an unintended victim.  (*People v. Nguyen* (2024) 103 Cal.App.5th 668, 680 (*Nguyen*).)

7

Steele next argues the theory of transferred intent should not work this way. He argues intent cannot be transferred twice: first, from the intended victim to an unintended victim, and next from the shooter to an aider and abettor. The second layer constitutes "imputation" of malice and therefore runs afoul of the new law.

Steele acknowledges at least two courts have rejected this argument: *Nguyen*, *supra*, 103 Cal.App.5th 668 and *People v. Lopez* (2024) 99 Cal.App.5th 1242 (*Lopez*). But he argues neither addressed the exact issue here: whether the two layers of transference are permissible. Both cases answered this question, however, and do so correctly.

In *Lopez*, Armondo Lopez aided and abetted Ramiro Ojeda, who shot at a van which they knew contained Ojeda's rival. (*Lopez*, *supra*, 99 Cal. App.5th at pp. 1245–1246.) Lopez admitted that, when he helped Ojeda, he knew Ojeda wanted to kill the rival. (*Id*. at p. 1245.) The bullets hit and killed a person different from the rival. The jury convicted Lopez of first degree murder. (*Id*. at pp. 1245–1246.) A trial court granted an evidentiary hearing on Lopez's petition for resentencing. (*Id*. at p. 1246.) The court found that Senate Bill 1437 had not abrogated the theory of transferred intent, and so, as a direct aider and abettor, Lopez could still be found guilty under the current law. (*Ibid*.) Our colleagues in the Fifth District affirmed. (*Id*. at 1247.)

In *Nguyen*, Ho Thai Nguyen arrived at a cafe with fellow gang members. (*Nguyen*, *supra*, 103 Cal.App.5th at p. 674.) A member of their gang had been shot earlier that night. (*Id*. at pp. 673–674.) Nguyen entered alone and asked to use the pay phone. (*Id*. at p. 674.) After Nguyen's call, his associates entered the

cafe and opened fire, killing three men. (*Ibid*.) A jury convicted Nguyen of first degree murder. (*Id*. at p. 675.) Nguyen filed a petition for resentencing, arguing the jury could have convicted him as a co-conspirator without finding he had the intent to kill. (*Id*. at p. 676.) The Sixth District affirmed the trial court's finding that, even if the jury convicted Ngyuen based on a conspiracy theory, the instructions necessarily required them to find he had the intent to commit the object of the conspiracy: here, murder. (*Id*. at pp. 678–679.) The court rejected Nguyen's argument his co-conspirators might have killed someone other than the target of the conspiracy, holding the doctrine of transferred intent would make Nguyen liable in that instance as well. (*Id*. at pp. 679–681.)

Steele incorrectly argues the Supreme Court's articulation of the transferred intent doctrine in *People v. Concha* (2009) 47 Cal.4th 653, 664 requires a different result. The *Concha* court described transferred intent as applying where "a defendant intends to kill a victim but misses and instead kills a bystander, the intent to kill the intended victim is imputed to the resulting death of the bystander and the defendant is liable for murder." Steele's argument is unpersuasive for the same reason our colleagues rejected it in *Nguyen* and *Lopez*. The *Concha* court did use the word "impute," but it did not hold malice was "imputed based on a person's participation in a crime." (*Nguyen, supra*, 103 Cal.App.5th at pp. 683–684; *Lopez, supra*, 99 Cal.App.5th at p. 1250.)

We agree with our colleagues in the Fifth and Sixth Districts. A person can be convicted of conspiracy to commit murder or as a direct aider and abettor of murder only if the factfinder has determined that person personally harbors malice.

9

The instructions require it.  (*Nguyen*, *supra*, 103 Cal.App.5th at p. 673; *Lopez*, *supra*, 99 Cal.App.5th at pp. 1247–1248.)  Thus, the application of liability through the transferred intent doctrine does not implicate concerns of imputing malice in violation of sections 188 or 189 as amended.  (*Ibid.*)

C

Steele incorrectly asserts a separate part of the prosecutor's closing argument allowed the jury to convict him as an aider and abettor without a finding of malice.  The prosecutor's words explode this argument.

[Prosecutor]: "We know [Steele] met up with those guys and he helped them plan the attack.  We know, again, [Steele's] idea was to pick up the guns from his own mouth.  If we believe his story, he was supposed to be the one that picks up the guns and hide the guns.  Again, aiding and abetting.

"And I'm going to read you what aiding and abetting says:

[Reading from instruction]: "A person may be guilty of a crime in two ways, one, he or she may have directly committed the crime, two, he or she may have aided and abetted someone else who commit[ed] the crime.

"In these instructions, I will call the other person the perpetrator.

"A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it.

[Prosecutor]: "You then look at the next instruction on aiding and abetting:

[Reading from instruction]: "To prove that the defendant is guilty of a crime based on aiding and abetting the crime, the

10

people must prove that, one, the perpetrator committed the crime.

[Prosecutor]: "We know that happened, we know that Darryl Williams, if we take the defendant's version, was trying to kill the Bounty Hunters and through transferred intent, he's guilty of the murder of Roy Jackson.

"Defendant knew the perpetrator intended to commit the crime. Well, he was in the planning stages, that's why he was there so that they could commit this crime and that he would pick up the guns.

[Reading the instruction]: "Before or during the commission of the crime, <u>the defendant intended to aid and abet the perpetrator in committing the crime</u>.
[Prosecutor stops reading from 21 instruction].

[Prosecutor]: "*He doesn't have to intend to kill anyone. He doesn't have to -- he only has to intend to help someone in whatever plan they have in committing a crime.*

"*He doesn't even have to say, look, I wanted to kill them. He just has to say, [Williams], I know what you're going to go do, what you're going to do, I intend to help you with this. That's all that the law requires.*

"[Steele's] words or conduct did, in fact, aid and abet the perpetrator's commission of the crime. We know that he planned the attack with them. We know he went there with them that night, stood by and gave them the opportunity. They could shoot at the Bounty Hunters, kill the Bounty Hunters and then come back and take the guns so that he could stash the guns.

"And again, the reason we have these laws is because the law recognizes that there's strength in numbers. One individual

11

by himself is unlikely to pick up a gun and go and try to do this type of a mission.

"And when you have extra people who are encouraging you, saying this is a good idea, I'll help you do this if you want to do this, I know we only have two guns, so what I'll do is I'll let you guys go up there and shoot, I'll stand in the back and I'll make sure I hide those guns so you guys can get away.

"Oh, you know what? This sounds like a better idea now. I think we can get away with this now, that's a good plan. We all decide we'll sneak up from behind and do this. And that's why the law says you're equally responsible." (Underlining and italics added.)

Steele argues this explanation, in particular the italicized portion above, allowed the jury to find him to be a direct aider and abettor merely by knowing of the plan and being at the designated location without his own intent to kill or to act in furtherance of that intent.

This argument is incorrect.

The prosecutor read the requirement in the aiding and abetting instruction, underlined above, that the defendant had to intend to aid the crime. His commentary on it – that Steele does not have to intend to kill anyone – is qualified by the context. Steele does not have to intend to kill anyone; he need only intend to help with the plan. But here the plan is murder. The prosecutor read the underlined portion of the instruction above that Steele had to intend to help Williams in committing the crime, and the only crime at issue in this case was murder. Read in context, then, the prosecutor's words mean Steele did not have personally to intend to kill anyone, but he must intend to help in

12

the plan, which is to kill. The instructions therefore required the jury to find Steele had his own intent to kill.

## D

Finally, Steele is ineligible for relief for a separate and independent reason: his argument is not based on a change to the law. He argues that the prosecutor's argument misled the jury about the need to find Steele had personal malice as an aider and abettor and conspirator to commit murder. The changes in the law due to Senate Bill 1437 and the related legislation did not affect these theories. (*Offley*, *supra*, 48 Cal.App.5th at p. 596 [new law does not affect liability for direct aider and abettor]; *People v. Medrano* (2021) 68 Cal.App.5th 177, 179.) Nor did they affect the viability of the doctrine of transferred intent. (*Lopez*, *supra*, 99 Cal.App.5th at p. 1245.)

Defendants can petition for resentencing when they cannot now be found guilty "because of" changes in the law. (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935–936; § 1172.6, subd. (a)(3).) Steele's argument at its core is that the prosecutor misled the jury under the law as it stands, *and as it was at the time of his trial*. This means that he could have challenged this issue on direct appeal. A section 1172.6 petition is not the vehicle for such challenges. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.) Such a petition can only succeed where it is based on a change to the law. (§ 1172.6, subd. (a)(3).)

## DISPOSITION

We affirm the order.

WILEY, J.

We concur:


STRATTON, P. J.          VIRAMONTES, J.


13